UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THOMAS JENNINGS,

                Plaintiff,

        -against-                         **14 CV 6377 (SMG)**

ANDREW YURKIW, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR A NEW TRIAL OR REMITTITUR**


<u>Attorneys for Plaintiff Thomas Jennings</u>

THE RAMEAU LAW FIRM
16 Court Street, Suite 2504
Brooklyn, New York 11241
(718) 852-4759

LUMER LAW GROUP
305 Broadway, Suite 1400
New York, New York 10007
(212) 566-5060


<u>Of Counsel</u>
Michael Lumer, Esq.
Amy Rameau, Esq.

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT I       DEFENDANTS' ARGUMENT IN SUPPORT OF THE
                COMPENSATORY DAMAGES VERDICT IS A NON-ISSUE IN
                THE CONTEXT OF THIS MOTION PRACTICE AND IS
                IMMATERIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT II      DEFENDANTS' MOTION TO REDUCE THE AMOUNT OF
                PUNITIVE DAMAGES AWARDED BY THE JURY AT THE
                SECOND TRIAL SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . 6

                A.     Applicable Standard of Review
                         for Motions under Fed. R. Civ. P. 59 . . . . . . . . . . . . . . . . . . . . . . . . 7

                B.     The Punitive Damages Award Should Not Be Remitted . . . . . . . . . 10
                     i.      Reprehensibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                     ii.     Ratio of Punitive to Compensatory Damages . . . . . . . . . . . . 14
                     iii.    Comparable Civil or Criminal Penalties . . . . . . . . . . . . . . . . . 17
                     iv.    The Amounts Awarded Are Not Excessive . . . . . . . . . . . . . . 18

POINT III     PLAINTIFF'S COUNSEL DID NOT ENGAGE IN DELIBERATE
                MISCONDUCT AND DEFENDANTS ARE NOT ENTITLED TO
                REMITTITUR OR A NEW TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                          <u>Page</u>

*BMW of North America, Inc. v. Gore*,
517 U.S. 559 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*,
955 F. Supp. 2d 118 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21, 24

*Dancy v. McGinley*,
843 F.3d 93 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Densberger v. United Techs. Corp.*,
125 F.Supp.2d 585 (D. Conn. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Dixon v. Agbai*,
2016 WL 3702749 (S.D.N.Y. July 8, 2016),
report and recommendation adopted,
2016 WL 5660246 (S.D.N.Y. Sept. 28, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Duarte v. St. Barnabas Hosp.*,
341 F. Supp. 3d 306 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Earl v. Bouchard Transp. Co., Inc.*,
917 F.2d 1320 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Greenaway v. Cty. of Nassau*,
327 F. Supp. 3d 552 (E.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*In re Fosamax Prods. Liab. Litig.*,
742 F. Supp. 2d 460 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Ismail v. Cohen*,
899 F.2d 183 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 9

*Jackson v. Tellado*,
2018 WL 4043150 (E.D.N.Y. Aug. 24, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 18

*Jackson v. Tellado*,
236 F. Supp. 3d 636 (E.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Jennings v. Yurkiw*,
2018 WL 5630454 (E.D.N.Y. Oct. 31, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14, 21

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lee v. Edwards*,
101 F.3d 805 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Levitant v. N.Y.C. Human Res. Admin.*,
914 F. Supp. 2d 281 (E.D.N.Y. 2012),
aff'd, 558 Fed Appx. 26 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Martell v. Boardwalk Enters.*,
748 F.2d 740 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Martinez v. Port Auth. of N.Y. & N.J.*,
2005 WL 2143333 (S.D.N.Y. Sept. 2, 2005),
*aff'd sub nom. Martinez v. The Port Auth. of New York & New Jersey*,
445 F.3d 158 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pac. Mut. Life Ins. Co. v. Haslip*,
499 U.S. 1 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Payne v. Jones*,
696 F.3d 189 (2d Cir. 2012),
opinion amended and superseded,
711 F.3d 85 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*People v. Garris*,
196 A.D.2d 724, 602 N.Y.S.2d 10 (1st Dep't 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ramirez v. New York City Off-Track Betting Corp.*,
1996 WL 210001 (S.D.N.Y. Apr. 30, 1996),
*aff'd* in part, *vacated* in part, 112 F.3d 38 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 9

*Scala v. Moore McCormack Lines, Inc.*,
985 F.2d 680 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Scala v. Moore McCormack Lines, Inc.*,
985 F.2d 680 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

iii

*Smith v. Wade*,
461 U.S. 30 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*State Farm v. Campbell*,
538 U.S. 408 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Thomas v. Kelly*,
903 F. Supp. 2d 237 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Trademark Research Corp. v. Maxwell Online, Inc.*,
995 F.2d 326 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir.1992),
aff'd, 297 F.3d 66 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wheatley v. Ford*,
679 F.2d 1037 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## Statutes

18 USC § 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 USC § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THOMAS JENNINGS,

                  Plaintiff,

      -against-

ANDREW YURKIW, et al.,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PRELIMINARY STATEMENT

This action was commenced under 42 USC §1983 and concerns the individual defendants' use of excessive force against him during the course of an arrest, which occurred while they were acting in their capacity as members of the New York City Police Department. On June 1, 2018, the jury returned a verdict for plaintiff, awarding awarding plaintiff $500,000 in compensatory damages, and $2,500,000 in punitive damages as allocated among the three individual defendants, for a total award of $3,000,000. The defendants' subsequent post-trial motion for relief under Fed.R.Civ.P. 50 and 59 was granted to the limited extent that the Court ordered a new trial limited to the determination of damages if plaintiff did not accept remittitur in the aggregate amount of $255,000. Plaintiff declined to do so.

The retrial of this matter began on April 1, 2019. Pursuant to the Court's prior rulings, the jury was instructed that liability had been previously determined at a prior trial of the action, and that plaintiff was entitled to both compensatory and punitive damages against

2

all of the defendants. On April 3, the jury returned a verdict awarding plaintiff $90,000 in compensatory damages, and punitive damages in the aggregate amount of $350,000. Defendants now move again for a new trial on damages or remittitur. For the reasons set forth below, the motion should be denied and the jury's verdict affirmed in all respects.

## STATEMENT OF FACTS

The trial of this matter began on Monday, April 1, 2019, with jury selection and openings. The first witness was called promptly thereafter. (See Trial Transcript [hereinafter "TT"], submitted as defendants' Exhibit A, at 49:1[1]). Evidence was taken until the parties rested during the early afternoon of April 3, 2019, meaning that the parties' presentation of their cases took less than two days, exclusive of closing arguments. (Def. Exh. C, TT at 403:22).

Plaintiff testified to the events that occurred leading up to and including the defendants' use of force against him in the second floor hallway of an apartment building located at 1560 Fulton Street, the injuries that he suffered as a result of the assault, and the treatment that he received. Plaintiff called to the stand defendants Yurkiw and LaGrandier, as well as Richard Francisco, MD, who was the attending physician at Woodhull Medical Center's emergency room at the time plaintiff was brought in for treatment following the assault. Plaintiff also presented testimony from Frank Flores, MD, a doctor certified in

---

[1] Rather than duplicate the submission of the trial transcript, all citations to the record herein will utilize the defendants' corresponding exhibits.

emergency room medicine who treated plaintiff while he was jailed at Rikers Island in the days following the arrest and assault.

The defendants called no witnesses in their case-in-chief, electing instead to elicit testimony from Yurkiw and LaGrandier during plaintiff's case-in-chief, and to cross-examine plaintiff and the two medical witnesses. The defendants also chose not to call defendant Solomito.

The jury returned a verdict in the afternoon of April 3, awarding plaintiff $90,000 in compensatory damages, and $350,000 in punitive damages. The latter were allocated as follows: $250,000 as to Yurkiw, $75,000 as to LaGrandier, and $30,000 as to Solomito. (Def. Exh. C, TT at 490:2-492:12). Judgment was entered on April 11, 2019, and docketed as Document 190.

The defendants' instant motion seeking to set aside the verdict is grounded on a wide assortment of factual and legal allegations that misstate and distort the record before the Court. Rather than outline the entire history of pretrial and trial proceedings, or catalogue each witness's testimony and the information in the documentation entered into evidence, the plaintiff will address each of the relevant factual issues in the context of each of the legal arguments that follow.

## ARGUMENT

## POINT I

## DEFENDANTS' ARGUMENT IN SUPPORT OF THE COMPENSATORY DAMAGES VERDICT IS A NON-ISSUE IN THE CONTEXT OF THIS MOTION PRACTICE AND IS IMMATERIAL

The defendants expend significant effort arguing about the scope of evidence presented in the two trials, arguing strenuously that the more recent testimony was less compelling than at the first trial. (Defs. Brief at 6-13). Certain facts are beyond dispute, including that: in both cases, there was uncontradicted evidence that plaintiff suffered a bi-lateral comminuted fracture with displacement. The first jury awarded $500,000 in compensatory damages, which the Court remitted to $115,000. The instant jury awarded $90,000, which is apparently acceptable to the defendants, as they are not seeking a new trial as to the compensatory award.

The defendants offer various arguments as to how the medical evidence could or should be interpreted, the weight and meaning that should be afforded to each item of testimony, and how the evidence at the second trial compares to the first. While such arguments might conceivably be relevant if presented as in support of defendants' opposition to a motion by plaintiff to set aside the jury's award (i.e., to explain why the jury's award should not be vacated), it is wholly irrelevant here, where plaintiff has not made any such motion.

This is not to say that plaintiff agrees with, or concedes, any of the defendants' evidentiary arguments set out in their brief under Point I. Plaintiff does take issue with

5

certain characterizations of the evidence that was before the jury, and the inferences that defendants seek to draw. But as neither party is seeking relief in this motion from that part of the verdict, the proffered argument is pointless and no response is necessary.

### POINT II

### DEFENDANTS' MOTION TO REDUCE THE AMOUNT OF PUNITIVE DAMAGES AWARDED BY THE JURY AT THE SECOND TRIAL SHOULD BE DENIED

The defendants offer several interlocking grounds for reducing the $350,000 award of punitive damages, none of which are availing. These include the spurious claims that the punitive damages need to be calculated in lockstep with the compensatory damages, that the damages as awarded are facially excessive, and that plaintiff's counsel "unjustly inflamed the passions of the jury" by engaging in "underhanded tactics." (Defs. Brief at 13-14). However, it is clear that there is no mechanistic relationship between compensatory and punitive damages, and that the jury was given a very clear and uncluttered view of defendants' conduct, and the resultant punitive damages are well within a reasonable range. As for defendants' very vocal attack on plaintiff's counsel lines of examination, defendants offer no basis for their *ipse dixit* conclusion that the jury was bamboozled into awarding a materially higher award than it would have otherwise. This last argument – which reflects a level of bitter personal animosity on the part of defense counsel that is both obvious and disappointing – is logically infirm and fails to acknowledge that the defendants deliberately chose not to move for a mistrial on these same grounds previously, and cannot now be heard to demand a new trial simply because they are unhappy with the verdict.

6

A.    **Applicable Standard of Review**
      **for Motions under Fed. R. Civ. P. 59**

As a preliminary matter, the issue of defendants' liability was determined at the first trial and affirmed by this Court in its October 31, 2018, decision. In that ruling, the Court found sufficient evidence both for upholding the first jury's finding of liability for both plaintiff's injuries and for punitive damages. The jury in the instant trial was instructed that its only function was to evaluate and award these categories of damages. (Defs. Exh. A, TT 30:8-31:1; Defs. Exh. C, TT 470:13-471:11), and thus the fact that jury awarded damages is beyond review for the purpose of this motion. Rather, all that defendants can challenge is the amounts awarded, and in this regard, the defendants have chosen to limit their challenge to the amount of punitive damages.

To be clear, defendants make clear they are limiting their motion to one under Fed.R.Civ.P. 59(e) for an order of remittitur. (Defs. Brief at 4-5). With respect to a motion to amend or alter the judgment, "the primary grounds for granting a Rule 59(e) motion to alter or amend are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Greenaway v. Cty. of Nassau*, 327 F. Supp. 3d 552, 563 (E.D.N.Y. 2018) (quoting *Densberger v. United Techs. Corp.*, 125 F.Supp.2d 585, 597 (D. Conn. 2000) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992), aff'd, 297 F.3d 66 (2d Cir. 2002)).

In the context of a motion for remittitur, there are two possible grounds for relief. As this Court has previously noted, "[t]he first is where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken. The

7

second is where the award is intrinsically excessive in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error. *Jennings v. Yurkiw*, 2018 WL 5630454, at *13 (E.D.N.Y. Oct. 31, 2018) (internal quotations and citations omitted). Here, there is no basis to suggest that the jury included an impermissible item of damages in its calculation. Rather, defendants are contending that the amount of damages awarded was so excessive as to work a fundamental injustice.

In evaluating defendants' argument that the jury's verdict is a "manifest injustice," it is important to bear in mind that the "calculation of damages is the province of the jury" and thus the fundamental question before this Court is whether the award in this trial, based on the evidence before this jury, is so high as to shock the judicial conscience and constitute a denial of justice. *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990); *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1011 (2d Cir. 1995); *see also*, *Jennings v. Yurkiw*, 2018 WL 5630454, at *13 (E.D.N.Y. Oct. 31, 2018); *Greenaway*, 327 F. Supp. 3d at 568–69. (E.D.N.Y. 2018)

The Court must give substantial deference to the jury's evaluation of the evidence to support its damages award, the weight to be given to that evidence, and the inferences to be drawn from the evidence. *Dancy v. McGinley*, 843 F.3d 93, 99–100 (2d Cir. 2016) ("In determining whether the jury awarded excessive damages, however, we view the evidence and draw all factual inferences in favor of [the non-movant], and we accord substantial deference to the jury's determination of factual issues." (quoting *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993) (first quoting *Wheatley v. Ford*, 679 F.2d 1037,

8

1039 (2d Cir. 1982), and then quoting *Martell v. Boardwalk Enters., Inc.*, 748 F.2d 740, 750 (2d Cir. 1984))); *see also*, *Ramirez v. New York City Off-Track Betting Corp.*, 1996 WL 210001, at *5 (S.D.N.Y. Apr. 30, 1996), *aff'd* in part, *vacated* in part, 112 F.3d 38 (2d Cir. 1997).

The substantial deference to the jury's damages determination extends to any contemplated remittitur: "the judge may reduce the award 'only to the maximum amount that does not shock the conscience' to ensure that the jury's decision will be disturbed as little as possible." *Id.*, at *5 (quoting *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir. 1993); *see also*, *Earl v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320, 1327 (2d Cir. 1990)). In assessing whether an award of damages is excessive, "reference to other awards in similar cases is proper." *Ismail*, 899 F .2d at 186. The comparison to other awards, however, is not confined to awards arising out of § 1983 cases. *Id.*  The comparison is properly made with regard to damages attributable to a type of injury without regard to the cause of the injury. Furthermore, comparison to prior cases must account for inflation. *See Martinez v. Port Auth. of N.Y. & N.J.*, 2005 WL 2143333, at *20, n.9 (S.D.N.Y. Sept. 2, 2005), *aff'd sub nom. Martinez v. The Port Auth. of New York & New Jersey*, 445 F.3d 158 (2d Cir. 2006).

Accordingly, the jury's verdict following this second trial, based only on the evidence presented and instructions given at the second trial, may only be disturbed or altered to the extent that leaving the verdict intact would work a "manifest injustice." For the reasons set forth below, there is no basis to find that the amounts awarded are so high as to warrant the relief sought by defendants, or otherwise justify a third trial of this matter.

9

**B.**     **The Punitive Damages Award Should Not Be Remitted**

This is an action concerning a deliberate violation of the constitution by three police officers. While it is true that they violently assaulted plaintiff, it is equally plain that in so doing they also violated the faith placed in them by the citizenry that entrusted them with their badges and the authority of the New York City Police Department. Thus, when they violently assaulted plaintiff, they did violence to the constitution, the reputation of the NYPD, and the overarching relationship between the people of this City and the officers it relies upon to serve and protect. This breach of trust cannot be overstated.

"A jury may appropriately award punitive damages where the 'character of the tortfeasor's conduct ... is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards.' " *Dixon v. Agbai*, 2016 WL 3702749, at *7 (S.D.N.Y. July 8, 2016), report and recommendation adopted, 2016 WL 5660246 (S.D.N.Y. Sept. 28, 2016) (quoting *Smith v. Wade*, 461 U.S. 30, 54 (1983)  (ellipses in original)). In determining whether a punitive damages award is excessive, federal trial courts must interpret the facts in the light most favorable to the nonmoving party. *Thomas v. Kelly*, 903 F. Supp. 2d 237, 265–66 (S.D.N.Y. 2012) (Citing *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993)); *see also Wheatley v. Ford*, 679 F.2d 1037, 1039 (2d Cir.1982) ("We  accord substantial deference to the jury's determination of factual issues.") (quoting *Martell v. Boardwalk Enters.*, 748 F.2d 740, 750 (2d Cir. 1984)). Such an evaluation should consider the three "guideposts" set out by the Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), which are the (1) degree of reprehensibility of the defendant's conduct, (2) relationship of the

punitive damages to the compensatory damages, and (3) criminal and civil penalties imposed by the state's law for the misconduct in question.

i.   <u>Reprehensibility</u>

In *Thomas v. Kelly*, the court noted the first guidepost – reprehensibility – was the most helpful and important factor in light of the facts and nature of the action. *Thomas*, 903 F. Supp. 2d at 265–66. Indeed, the Second Circuit has made clear that ordinarily this is so:

> The Gore decision described the degree of reprehensibility of the defendant's misconduct as '[p]erhaps the most important indicium of the reasonableness of a punitive damages award.' This guidepost is particularly important and useful because punitive damages are intended to punish, and the severity of punishment, as in the case of criminal punishments, should vary with the degree of reprehensibility of the conduct being punished. Gore emphasized 'the accepted view that some wrongs are more blameworthy than others.'

*Payne v. Jones*, 696 F.3d 189, 200-01 (2d Cir. 2012), opinion amended and superseded, 711 F.3d 85 (2d Cir. 2013) (internal citations omitted).

Here, the defendants punched and brutalized an unsuspecting man without cause or justification, and did so knowingly protected from consequences or judgment by the very badge they dishonored. At this retrial, while the defendants did not take the stand to deny their conduct, they offered no excuse for their violence, no explanation, and certainly no apologies. In fact, only Yurkiw took the stand, and that was because he was called by the plaintiff. This is precisely the sort of conduct that was recently evaluated in another Eastern District matter.

The defendants argue that case law would not support such a verdict, but fail to

11

acknowledge a very recent Eastern District case where comparable awards were upheld by the district court precisely because of the egregiousness of the conduct. . In *Jackson v. Tellado*, an off-duty officer was violently assaulted by numerous officers, who choked, beat, and tasered him, causing him to suffer bruises and contusions all over his body, as well as a fractured hand that had not fully healed, as well as anxiety, paranoia, and depression resulting from the physical assault. 2018 WL 4043150, at *5 (E.D.N.Y. Aug. 24, 2018). The jury awarded a total of $2,675,000 in punitive damages against the 12 defendants, with individual awards of $400,000, $350,000, $300,000 (twice), $275,000 (twice, $250,000, $150,000 (twice), $125,000, and $50,000 (twice). *Jackson v. Tellado*, 236 F. Supp. 3d 636, 642 (E.D.N.Y. 2017). While the compensatory damages were remitted, the court upheld the punitive award in its entirety. *Jackson v. Tellado*, 2018 WL 4043150, at *9–10 ("In this case, there is a strong need for punishment and deterrence. Defendants' violent and malicious assault on Plaintiff is wholly improper behavior for law enforcement officers and warrants a strong message of deterrence and censure. The total punitive damages award given by the jury in this case, because it is a composite of twelve individual awards of amounts between $50,000 and $400,000, is not so high as to 'shock the judicial conscience' or differ markedly from penalties imposed in comparable cases.").

It is certainly true that the injuries suffered by the plaintiff in *Jackson* were more extensive than that here, as reflected by the larger award of compensatory damages, but the conduct is not dissimilar. The defendants in both cases were on-duty police officers who engaged in, or failed to intervene, wholly unjustifiable violence towards a prone individual.

12

That plaintiff did not suffer further injuries can only be understood as a matter of luck, and is provides no cover for the defendants' cowardly betrayal of their oath as officers.

Put differently, it is the conduct that is at issue in terms of punitive damages. In both this case and *Jackson*, police officers engaged in a group assault without justification, and then lied about it. It would be horrific behavior if the defendants were civilians engaged in gang activity; it is profoundly worse when perpetrated in the name of the NYPD and law enforcement. The fact that the blows that were struck did not do as much damage as they could have (such fracturing more facial bones or tearing the skin so as to require stitches and leaving permanent scars), reflects luck, not mitigation. An award of $250,000 against Yurkiw for his role in initiating the attack, rendered by a jury whose focus had been brought to bear on this very specific question of valuation, is not so high as to "shock the judicial conscience."

That Yurkiw was assessed a significantly larger amount than his co-defendants is easily understood as a reflection of his dominant role in the assault. The distinction between LaGrandier and Solomito lies in the testimony given by plaintiff. Mr. Jennings testified at length to the role LaGrandier played in his arrest, and he explained to the jury how it was LaGrandier that positioned herself in front of him so that she could grab and hold him just as Yurkiw's fist smashed into Mr. Jenning's face from the side. In view of the extensive testimony about how LaGrandier pulled Levi Jennings from Mr. Jennings' hands moments before this assault, the jury could readily conclude that LaGrandier knew this assault was about to happen. Moreover, the evidence before the jury was that she was immediately in

13

front of plaintiff when the first blows landed, and she immediately began striking Mr.

Jennings himself. With this understanding, $75,000 is comfortably inside a reasonable range.

As for Solomito, unlike Yurkiw and LaGrandier, the plaintiff was unable to say precisely what it was that this defendant did, other than participate in the beating once he was on his way to the ground. There was less evidence concerning Solomito at this trial than the first, and thus it is not surprising that the amount awarded against him was less than his co-defendants. However, it is important to note that the jury, faced with a stripped-down version of the defendants' conduct, limited information as to Solomito's role, and no awareness of his prior lies and false denials, still found that $30,000 was a fair amount to deter and punish.

ii.    Ratio of Punitive to Compensatory Damages

Defendants' invocation of the remittitur order as a guidepost that fixed the permissible ratio between the compensatory and punitive damages is misplaced. While the relationship between the two is generally relevant, there are no fixed guideposts, and the Court's evaluation of the reasonableness of this verdict can only be undertaken based on the record from this trial. *Jennings v. Yurkiw*, 2018 WL 5630454, at *17 (E.D.N.Y. Oct. 31, 2018) ("Generally, *Gore* marks a ten-to-one ratio as the due process ceiling of punitive to compensatory damages, while rejecting a categorical or formulaic approach."). The ratio in the instant verdict falls well within an acceptable range and provides no basis for adjustment. Certainly, nothing about the proportionality compels a finding that the punitive damages as awarded are impermissibly excessive or otherwise require judicial intervention in the jury's

careful reasoning.

In terms of strict proportionality, "[w]ith respect to the ratio of punitive damages to compensatory damages, the Supreme Court has been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 329 (S.D.N.Y. 2018) (quoting *State Farm v. Campbell*, 538 U.S. 408, 424 (2003)(citations and internal quotations omitted)). The absence of any fixed ratios concerns all inquiries into verdicts, regardless of whether they follow a first trial or a retrial. The salient point being that the propriety of the relationship between compensatory and punitive damages is fact dependent and can only be evaluated on a trial by trial basis.

Having said that, "the [Supreme Court] has noted that '[o]ur jurisprudence and the principles it has now established demonstrate ... that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.' " *Id.* at 425 (quoting *State Farm*, 538 U.S. at 424-425). The Court has further observed that a 4:1 ratio "might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425 (citing *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–24 (1991)).

That this analysis is fact-specific is beyond dispute. For instance, Second Circuit has previously permitted a 75,000:1 to stand where only nominal damages were awarded. *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996). In explaining its decision, the Second Circuit explained, "the use of a multiplier to assess punitive damages is not the best tool [for deciding whether to let a punitive damage award to stand]." *Id.*  The Circuit has more

recently explained that in certain circumstances, 10-1 ratio is perfectly acceptable, while in others a 1:1 is borderline excessive. *Payne v. Jones*, F.3d 85, 103 (2d Cir. 2013).

In this case, individual ratios range from 2.5:1 (Yurkiw) to 0.8:1 (LaGrandier) to 0.3:1 (Solomito). In the aggregate, the ratio is 3.7:1. Viewed in the context of the facts presented at the retrial, these ratios provide no basis for the relief defendants seek.

Defendants argue that, given that the jury awarded compensatory damages in an amount below the amount set by the Court following the first trial, the "[p]unitive damages therefore must commensurately be remitted to 22% less than the remittitur, or $93,600 against Officer Yurkiw and $7,800 each against Officers LaGrandier and Solomito." (Defs. Brief at 1-2). In plain terms, defendants argument appears to be the ratio between the remitted compensatory and punitive awards in the Court's October 31 order is a fixed formula that dictates the numerical relationship between the two. Hence, defendants conclude, since the second jury awarded less compensatory damages than the remitted amount, the punitive damages must be adjusted downward in lockstep to maintain the same ratio as in the October 31 order.

Defendants' argument lacks merit. Broadly speaking, there is no preset numerical relationship between compensatory and punitive damages. The question of whether leaving any of the three punitive damage awards intact would work a manifest injustice cannot be determined by simply comparing the second verdict to the order of remittitur, although that appears to be defendants' argument. The defendants' claim in this regard can be distilled down to the idea that order of remittitur established a fixed relationship between the

damages. Hence, it follows that any verdict that exceeded (i) any individually remitted amount, or $255,000 as a whole, or (ii) a ratio of approximately 1:1.2 between compensatory and punitive damages would, by definition, shock the judicial conscience. Under defendants' theory, the only legally acceptable outcome is one that confirms the remittitur, and so the case must be tried and again and again until a sufficiently low verdict is returned. This is incorrect.

The second trial presented a far more focused view on, in relevant part, the misconduct that compelled an award of punitive damages. The amounts awarded were significantly lower than at the first trial, and are plainly not disproportional to either the injuries defendants inflicted or the malevolence of their actions and their betrayal of their badges. Neither of defendants' arguments provide cover for any of the reductions they seek.[2]

### iii.   Comparable Civil or Criminal Penalties

The third prong also supports the award at or close to the jury's verdict, as the defendants' conduct was plainly criminal. The repeated punching and striking of plaintiff, resulting in multiple injuries and a bi-lateral nasal fracture with a deviated septum and displacement could readily constitute a violation of 18 USC § 242, which would expose each defendant to a term of imprisonment of up to ten years. This Court has previously found that the defendants' conduct to be nothing more than a mere misdemeanor, implying, however inadvertently, that the defendants might have thought it a mere frolic, and not

---

[2]  The defendants' third argument is that plaintiff's counsel brought about an unduly large verdict by repeatedly inflaming the jury's passions. The absurdity of this argument is addressed separately in Point III *infra*.

considered for a moment that sucker punching somebody in the face, twice, and then beating him while he lay on the ground was a potentially serious offense. Plaintiff respectfully disagrees.

In *Jackson*, where the conduct was not dissimilar to that at issue here, the court concluded that the defendants "could have been charged with second degree assault based on their conduct on August 21, 2010." *Jackson*, 2018 WL 4043150, at *8 (citing *People v. Garris*, 196 A.D.2d 724, 724, 602 N.Y.S.2d 10 (1st Dep't 1993) (conviction upheld where evidence against defendant "included the testimony of the victim that defendant repeatedly struck her ... in the head"). As the *Jackson* court noted, the defendants' police training gave them additional notice as to the gravity of official misconduct and abuse of their authority as law enforcement officers. This is equally true here. Put most simply, one need be a police officer or trained in the law to know that violently assaulting someone is a criminal act, and one need not have an advanced law degree to understand the seriousness of such conduct when one is a member of law enforcement and acting in the scope of their employment. *Id.*

iv.   The Amounts Awarded Are Not Excessive

The evidence adduced in the second trial, with respect to the defendants' violent assault on plaintiff, was far more limited than in the first trial. Unlike the first trial, the defendants at the retrial did not attempt to rebut plaintiff's testimony concerning the defendants' assault. As a result, the defendants' truthfulness was not an issue, nor was the jury confronted with a trio of lying defendants. The critical point here being that the jury's focus was limited to assessing damages based on an apparent agreement between the parties

18

that the assault occurred as alleged. This posture removed the defendants' repeated
fabrications and outright lies from the jury's calculus of damages. This left a fairly
straightforward valuation of the excessive force (i.e., the assault, rather than the assault and
coverup and perjury at trial). Having removed the defendants' undeniable mendacity that was
on full display at the first trial from the jury's consideration, the end result is unadulterated
verdict reflecting the jury's clear-eyed assessment of the misconduct.

Here, the jury listened to uncontested testimony to the effect that Andrew Yurkiw,
without any provocation of any sort, punched Thomas Jennings twice in the face. Moreover,
Yurkiw was standing off to plaintiff's right side, while plaintiff was being engaged by Amber
LaGrandier, and thus plaintiff never saw either punch coming, and absorbed both blows to
the center and center-right part of his face around his nose and right eye. The evidence
before the jury was undisputed, and Yurkiw made no effort to justify his actions, nor did he
apologize or show any hint on contrition. Neither Solomito nor LaGrandier took the stand,
even though LaGrandier's involvement with plaintiff was testified to at length by Mr.
Jennings. The jury was then charged, in relevant part:

> And as I told you at the beginning of the jury selection, **it has
> already been determined that each of the defendant
> officers used excessive force when they arrested Mr.
> Jennings.** It has also already been determined that Mr. Jennings
> is entitled to be compensated, or to recover what the law calls
> compensatory damages for that excessive force. **Finally, it has
> already been determined that the use of force by the
> defendants was so extreme that what the law calls punitive
> damages should be awarded as well.**
>
> Thus, you will not be deciding whether the defendants used
> excessive force when they placed plaintiff under arrest, because

19

> it has already been decided that they did. You will not be
> deciding whether the plaintiff should recover compensatory and
> punitive damages, because it has already been decided that he
> should. You will be deciding what amount of compensatory
> damages and what amount of punitive damages should be
> awarded.

(Defs. Exh. C at 470:20-471:11) (Emphasis added).

In this context, an award of $250,000 against Yurkiw where the jury was told that, as a matter of law, Yurkiw's assault on plaintiff "was so extreme" that punitive damages were necessary, is entirely reasonable. The conduct here, a vicious and entirely unjustified attack by a police officer on an unsuspecting, smaller individual, that triggered a further assault by Yurkiw's two colleagues, was unconscionable. That Yurkiw made no effort to explain his conduct–which he obviously could not do, without having to confront the prior denials he and the other defendants had offered at the first trial–depicted a violent officer whose conduct was the epitome of police brutality.

## POINT III

### PLAINTIFF'S COUNSEL DID NOT ENGAGE IN DELIBERATE MISCONDUCT AND DEFENDANTS ARE NOT ENTITLED TO REMITTITUR OR A NEW TRIAL

Just as after the first trial, defendants insist that the verdict can only be understood as a by-product of plaintiff's counsel's putative misconduct. There is no merit to this argument, and the defendants' attempt to ignore not one, but two damning verdicts is not worthy of extended discussion.

20

As this Court ruled following the first trial, "[t]o successfully move for a new trial on this basis, Defendants must show that Plaintiff's counsel engaged in misconduct that 'cause[d] prejudice to the opposing party and unfairly influence[d the] jury's verdict.' " *Jennings v. Yurkiw*, 2018 WL 5630454, at *7 (E.D.N.Y. Oct. 31, 2018) (quoting *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 955 F. Supp. 2d 118, 144 (E.D.N.Y. 2013) (quoting *In re Fosamax Prods. Liab. Litig.*, 742 F. Supp. 2d 460, 477 (S.D.N.Y. 2010))). Furthermore, "[a] court deciding a new trial motion based upon opposing counsel's conduct should consider 'the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, and the manner in which the parties and the court treated the comments.' " *Id.* (citing *Claudio*, 955 F. Supp. 2d at 144 (quoting *Levitant v. N.Y.C. Human Res. Admin.*, 914 F. Supp. 2d 281, 311 (E.D.N.Y. 2012), aff'd, 558 Fed Appx. 26 (2d Cir. 2014))). Finally, in "[g]reat discretion is to be given the judge who was present throughout the trial and is best able to determine the effect of the conduct of counsel on the jury." *Id.* (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1289 (2d Cir. 1990) (citation omitted)).

None of defendants' complaints here warrant much discussion. It is important to note that defendants do not offer this argument to request a new trial, but rather to convince the Court that this is a valid basis to remit the damages further. In this regard, it is defendants burden to offer meaningful evidence as to how counsel's behavior resulted in an improperly amplified award. They make no real effort to do so, other than to repeatedly state that her comments were prejudicial and therefore must somehow, some way, have inflated the jury's

figures. There is simply no basis in the record for this finding.

It is also worth pointing out that defendants have already waived their most serious claim in this regard to the extent that defendants might otherwise wish for a new trial. More precisely, defendants have complained, "[t]he most egregious example of counsel's misconduct fell within the ambit of the Court's exclusion of these questions. After Dr. Flores' testimony and with the jury present in the courtroom, counsel stood up and blurted out "given the testimony we've heard, Your Honor, I ask that you take judicial notice of the gang assault statute…" (Defs. Brief at 19). The defendants do concede that the Court reporter only heard part of the statement (and given the rushed delivery and timing of the statement, it is not known what portion, if any, was heard by the jury), or that the Court admonished counsel immediately thereafter, and again the next day, when the Court gave an instruction to the jury, as defendants requested, and to which defendants did not object. (Defs. Exh. C at 396:13-18, 401:9-19).

Most importantly, however, as defendants somehow neglect to mention in their motion, is the defendants' letter to the Court on the same day as this supposedly trial-altering event took place. In that letter, filed in the evening of April 2, 2019, defendants expressly stated as follows:

> While defendants believe a mistrial is warranted, we decline to seek one at this time if only to prevent the defendants from having to sit through this proceeding another time where, based on the track record of this case, there is a high probability that some other issue along these lines would need to be dealt with by the Court.

(See Brian Francolla letter dated April 2, 2019, docketed as Document 180). In retrospect,

22

that letter, coupled with this motion, is nothing more than a bit of gamesmanship by which defense counsel, solemnly invoking their most sincere concern for having to force their clients to sit through yet another trial, opted to let the case go to the jury. Confronted with a larger verdict than counsel would like, counsel now, with nary a word about their prior position, asks that the Court order a new trial without regard for its impact on their clients. This is not to harp on the inference that counsel's concern for their individual clients is a somewhat saccharine act replete with crocodile tears, but to point out that at the time the comments were made, defendants expressly stated that they did not want a new trial.

Perhaps the biggest flaw in defendants' argument, however, is the absence of any evidence of prejudice. Each of the examples cited by defendants (including lines of questioning about criminal corollaries, attacks on the credibility of the defendants, and questions about attempts by the defendants to frame the plaintiff (Defs. Brief at 18-21)), drew objections that were sustained by the Court. Thus, the picture defendants have painted of plaintiff's counsel in this regard, is of an attorney repeatedly being cut off by the Court for improper comments or questions, capped off by a curative instruction from the Court at defendants' request.

As another court recently observed, such conduct by counsel was likely more prejudicial to plaintiff than to the defendants. That court's ruling on a very similar motion is highly instructive:

> With respect to the Rule 59 motion, although plaintiff's counsel engaged in courtroom antics and theatrics that were unprofessional and inappropriate, the Court has no reason to believe that counsel's conduct improperly prompted the jury to

return a verdict in plaintiff's favor. There are several reasons for this conclusion. First, at times counsel's conduct was so clearly inappropriate and unprofessional that, if a rational juror were to have improperly considered such conduct in reaching a verdict, he or she would have been less likely to return a verdict for the plaintiff, not more likely. Second, counsel's antics primarily related to trivial and/or collateral issues in the case that could not possibly have influenced the jury's verdict. Third, when the Court warned counsel about certain behavior, counsel generally avoided repeating the same conduct. Fourth, the Court, sometimes *sua sponte*, gave extremely strong and specific instructions to the jury during the course of the trial to alleviate any potential prejudice to defendant from plaintiff's counsel's conduct; defendant never requested any additional relief during the trial (such as additional instructions, a mistrial, or other sanction). Finally, the fact that the jury found no liability on the gender discrimination claim illustrates that the jury was not blindly influenced by counsel's conduct when returning a verdict favorable to plaintiff. In sum, having presided over the entire trial (and having observed the evidence, the jury, and the conduct of plaintiff's counsel), the Court concludes that plaintiff's counsel's conduct did not unfairly influence the jury's verdict in any way. In fact, the Court believes that plaintiff did not prevail because of counsel's inappropriate conduct, but rather, prevailed despite such conduct. Accordingly, the Rule 59 motion is denied.

*Claudio*, 955 F. Supp. 2d at 124–25.

Based on defendants' articulation of counsel's transgressions, the above analysis would be equally applicable in this case. Defendants cannot point to a single statement where counsel revealed damning information that was meant to be kept from the jury, or put the jury on notice of a fact or an event that the jury should not have known, or otherwise materially disadvantaged the defendants. Rather, counsel, as defendants argue, persisted in lines of questioning only to have its hand slapped by the Court. This is conduct that is <u>harmful</u> to the plaintiff.

24

Parenthetically, this is not to suggest that plaintiff's counsel did a poor job, or did not obtain a substantially favorable outcome through skill and hard work. The point here is simply that, to the extent that plaintiff's counsel's conduct as delineated by defendants was objectionable or improper, those particular acts or events were addressed decisively by the Court, and did not work a benefit to the plaintiff. While it is obvious that defense counsel harbors a fairly deep well of resentment towards plaintiff's counsel, none of the conduct of which defendants complain provide a basis for a new trial or remittitur.

[Remainder of Page Intentionally Blank]

## <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion for remittitur should be denied in its

entirety.


Dated:  New York, New York
        June 17, 2019


                                        Respectfully submitted,

                                        THE RAMEAU LAW FIRM
                                        16 Court Street, Suite 2504
                                        Brooklyn, New York 11241
                                        (718) 852-4759

                                        /s/ Amy Rameau
                                        _____
                                        Amy Rameau, Esq.



                                        LUMER LAW GROUP
                                        Attorneys for the Plaintiff
                                        225 Broadway, Suite 2700
                                        New York, New York 10007
                                        (212) 566-5060

                                        /s/ Michael Lumer
                                        _____
                                        Michael Lumer, Esq.



To:     All counsel of record (By ECF)